UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COMMERCE WEST INSURANCE COMPANY,<br><br>                            Plaintiff,<br><br>   v.<br><br>IGNACIO CISNEROS, et al.,<br><br>                            Defendants. | CASE NO. C20-0109-RSM-MAT<br><br>REPORT AND RECOMMENDATION |

INTRODUCTION

Plaintiff Commerce West Insurance Company (Commerce West) brought this suit against defendants Ignacio Cisneros (Cisneros) and Estate of Alla Chikh, by and through Personal Representative Ulyana Johnston (Estate of Chikh). (Dkt. 1.) Commerce West seeks a declaration it has no obligation to defend or indemnify Cisneros in a lawsuit the Estate of Chikh filed against Cisneros for damages and the wrongful death of Alla Chikh (Chikh), *Estate of Alla Chikh v. Cisneros*, King County Superior Court, Case No. 19-2-26501-9-SEA ("underlying lawsuit").

Commerce West now seeks summary judgment against defendants. (Dkt. 11.) Commerce West filed its Motion for Summary Judgment the day after the Court entered default against Cisneros due to the failure to answer or appear. (Dkts. 10-11.) The Court subsequently entered default against the Estate of Chikh due to the failure to answer or appear. (Dkt. 18.) Neither

REPORT AND RECOMMENDATION
PAGE - 1

defendant responded to plaintiff's motion. The undersigned, for the reasons set forth below, recommends plaintiff's unopposed Motion for Summary Judgment (Dkt. 11) and the requested relief be GRANTED, and this case DISMISSED with prejudice.

## BACKGROUND

Commerce West entered into a Homeowner Insurance Policy with Cisneros and Chikh, a married couple, on or about November 30, 2017. (Dkt. 12, Ex. B (Policy No. ACH3000837505).) The policy covers the period of December 30, 2017 through December 30, 2018, names Cisneros and Chikh as the insureds, identifies their "Insured Residence" in Federal Way, Washington, and provides for personal liability coverage. Commerce West also, on or about May 31, 2018, entered into an Auto Insurance Policy with Cisneros and Chikh, providing coverage from June 30, 2018 through December 31, 2018, listing a 2014 Cadillac Escalade as the "Insured Vehicle", and providing both personal liability coverage and uninsured motorist coverage. (*Id*., Ex. C (Policy No. ACPA 001843781).)

On October 9, 2017, the Estate of Chikh filed the underlying lawsuit, asserting causes of action for wrongful death and negligence. In the complaint, the estate alleges that, on July 10, 2018, Chikh was driving a vehicle in Kent, Washington, when she was "cut off" and forced to stop by a vehicle driven by Cisneros. (*Id*., Ex. A.) The complaint states Cisneros exited his vehicle and engaged in a conversation with Chikh, retrieved a firearm from his vehicle, and returned to Chikh's vehicle and fired several rounds, striking Chikh in the head and resulting in her death at the scene and wounding a passenger. Cisneros fled the scene after the shooting. A police report indicates Chikh had been driving and was sitting in a Cadillac Escalade at the time of her death. (*Id*., Ex. D at 3.)

On January 9, 2020, Commerce West issued a Reservation of Rights letter to Cisneros

outlining its position with respect to the underlying lawsuit. (*Id*., Ex. E.) Commerce West is defending Cisneros in that lawsuit under a Reservation of Rights. Now, in the current action, Commerce West seeks declaratory relief against Cisneros and the Estate of Chikh.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of showing the district court an absence of evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). A mere scintilla of evidence does not suffice to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party rely on

REPORT AND RECOMMENDATION
PAGE - 3

allegations in the complaint or unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

Defendants did not oppose plaintiff's motion for summary judgment and have been found in default. However, because the Court has an affirmative duty to determine whether plaintiff is entitled to a judgment as a matter of law, the Court assesses the substance of the parties' claims. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

A.  Duty to Defend

Under Washington law, an insurer's duty to defend an insured is broader than the duty to indemnify and is based on the potential for liability. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007) (citing *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002)). "An insurer has a duty to defend when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Id.* at 52-53 (internal quotation marks and quoted sources omitted). An insurer is not relieved of its duty unless the claim alleged is "'clearly not covered by the policy.'" *Id.* at 53 (quoting *Truck Ins. Exch.*, 147 Wn.2d at 760). The duty to indemnify, in contrast, rests on actual liability and actual coverage under an insurance policy. *Id.* at 52 (citing *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000)). *Accord Indian Harbor Ins. Co. v. City of Tacoma*, 354 F. Supp. 3d 1204, 1213 (W.D. Wash. 2018) ("The duty to indemnify exists only if the insurance policy actually covers the insured's liability, whereas the duty to defend arises when the policy could conceivably cover allegations in a complaint.") (citation omitted).

A Court, as a general matter, determines the duty to defend "from the 'eight corners' of the insurance contract and the underlying complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803, 329 P.3d 59 (2014). "[I]f a complaint is ambiguous, a court will construe it liberally in

favor of triggering the insurer's duty to defend." *Woo*, 161 Wn. 2d at 53. An insurer may look outside the complaint if the allegations are contradictory or ambiguous or if coverage is unclear, but may only rely on extrinsic facts to trigger the duty to defend. *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 752, 320 P.3d 77 (2013) (quoting *Woo*, 161 Wn. 2d at 52-54). Where the duty to defend is uncertain, an insurer may, as here, provide defense under a reservation of rights and seek a declaratory judgment it has no duty to defend. *Id*. With a declaration of noncoverage, an insurer is not obligated to pay for further defense. *See Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn. 2d 872, 885, 297 P.3d 688 (2013) (citations omitted).

Interpretation of an insurance contract is a question of law. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002). To establish coverage, the insured must show the loss alleged falls within the scope of the policy's insured losses. *McDonald v. State Farm Fire & Casualty Co.*, 119 Wn.2d 724, 731, 837 P.2d 1000 (1992). To avoid coverage, the insurer must show the loss is excluded by the policy. *Id*. Where the language is clear, the court must enforce the policy as written and may not create ambiguity where none exists. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). A clause is only considered ambiguous if it is susceptible to two or more reasonable interpretations, and any ambiguity is resolved in favor of the insured. *Id*. The court is further bound by definitions provided in the policy. *Austl. Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 147 Wn. App. 758, 766, 198 P.3d 514 (2008) (citing *Overton*, 145 Wn.2d at 427).

B.      Commerce West Policies

Commerce West denies the existence of coverage in either the Homeowner Insurance Policy or the Auto Insurance Policy for the claims in the underlying lawsuit and, therefore, the absence of any duty to defend or indemnify. It seeks a declaratory judgment stating as such.

1.   Homeowner Insurance Policy:

The applicable Homeowner Insurance Policy provides that it will pay sums for which an insured is liable by law caused by a covered "occurrence", defined in the policy as "an accident, including repeated exposures to similar conditions that results in 'bodily injury' or 'property damage' during the policy period." (Dkt. 12, Ex. B (Form 3, p. 4, 15).) The policy also identifies excluded occurrences. It excludes bodily injury or property damage: "1) which is expected by, directed by, or intended by an 'insured'; 2) that is the result of a criminal act of an 'insured'; or 3) that is the result of an intentional and malicious act by or at the direction of an 'insured.'" (*Id*. at Form 3, p. 20.) This exclusion applies even if the injury or damage "that occurs is different than what was expected by, directed by, or intended by the 'insured'" or "is suffered by someone other than the person or persons expected by, directed by, or intended by the 'insured'." (*Id*.) (*But see id*. (exclusion does not apply to injury or damage arising "out of the use of reasonable force to protect people or property."))

Commerce West asserts that, under Washington law, an intentional act cannot, by definition, be an accident, and that the consequences of intentional acts are not accidents even if the intent to harm is absent. *See Safeco Ins. Co. v. Butler*, 118 Wn.2d 383, 401-03, 823 P.2d 499 (1992) (where individual "intentionally fired his gun at an occupied, metal truck[]" and "no reasonable person could conclude [individual] was unaware of the possibility of ricochet, or that a ricochet might hit an occupant of the truck[,]" the resulting injury was "not the result of an 'accident'," and insurer had no obligation to provide coverage for the injury); *Safeco Ins. Co. of Am. v. Dotts*, 38 Wn. App. 382, 385-86, 685 P.2d 632 (1984) (backhand slap resulting in death was not an "accident" even if there was no intent to kill). Commerce West asserts it is an undisputed fact Cisneros intentionally shot and killed Chikh. Commerce West points to the

REPORT AND RECOMMENDATION
PAGE - 6

Homeowner Insurance Policy as excluding such criminal or other intentional conduct and case law finding similar conduct excluded from insurance coverage. *See, e.g., Allstate Ins. Co. v. Raynor*, 93 Wn. App. 484, 494-97, 969 P.2d 510 (1999) (policy provided no coverage for excluded intentional and criminal acts and individual "clearly engaged in deliberate acts" and "clearly violated criminal statutes" when "he shot his neighbors in their own yard, chased them into their home, and continued firing."); *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 96, 776 P.2d 123 (1989) (finding no coverage or duty to defend where insured "pumped the shotgun, aimed it at [the victim], and pulled the trigger[,]" and therefore "deliberately fired the shotgun" at the victim; "The fact that he claims to have done so in self-defense in no way negates the deliberate nature of his act.")

The Homeowner Insurance Policy does not define the term "accident." Where "accident" is not defined in an insurance policy, Washington courts look to the common law. *Lloyd v. First Farwest Life Ins. Co.*, 54 Wn. App. 299, 302, 773 P.2d 426 (1989) (citation omitted). *Accord Roberts*, 179 Wn. App. at 755. Common law definitions of accident include "'an unusual, unexpected, and unforeseen happening,'" and "a loss that happens '"without design, intent, or obvious motivation."'" *United Servs. Auto. Ass'n v. Speed*, 179 Wn. App. 184, 197-98, 317 P.3d 532 (2014) (quoting *Brosseau*, 113 Wn.2d at 95, and *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 685, 801 P.2d 207 (1990) (quoted source omitted), *overruled in part on other grounds by Butzberger v. Foster*, 151 Wn.2d 396, 89 P.3d 689 (2004)).

Washington courts have clarified:

> [A]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual.

REPORT AND RECOMMENDATION
PAGE - 7

*Roller*, 115 Wn.2d at 685 (citations omitted). The insured does not need to intend or expect the injurious consequences of actions taken. *Lloyd*, 54 Wn. App. at 302 (citing *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81*, 20 Wn. App. 261, 263, 579 P.2d 1015 (1978) (fire in school garbage can resulting in building blaze); *Dotts*, 38 Wn. App. at 385-86 (backhand slap resulting in death)). "All that is required is that the claimant know or should know facts from which a prudent person would conclude that the injurious consequences are reasonably foreseeable." *Id*. *Accord Roberts*, 179 Wn. App. at 756. This inquiry involves an objective, not a subjective determination. *Speed*, 179 Wn. App. at 198 (citing *Roller*, 115 Wn.2d at 685). The perspective of the insured is not relevant. *Butler*, 118 Wn.2d at 403; *Roller*, 115 Wn.2d at 685. "Either an incident is an accident or it is not." *Roller*, 115 Wn.2d at 685.

The facts set forth in the complaint filed in the underlying action clearly depict the occurrence at issue as involving an intentional and criminal act:

> As Chikh entered a parking lot, she was cut off by a vehicle driven by Defendant, which caused Chikh to come to a stop. . . . Defendant exited his vehicle and approached the vehicle driven by Chikh. Defendant exchanged words with Chikh and [a passenger], then returned to his vehicle and retrieved a firearm. Defendant again approached Chikh's vehicle and fired several shots into the passenger compartment. Both Chikh [and the passenger] were struck by bullets fired by Defendant. Chikh was struck in the head and died at the scene as a result of her injuries. . . . After firing into Chikh's vehicle, Defendant returned to his vehicle and drove away at a high rate of speed with [his minor son] still in the back seat.

(Dkt. 12, Ex. A, ¶¶4-7.) The mere fact the complaint includes a negligence cause of action (*see id*., ¶14) does not alter the clearly deliberate nature of the conduct described in the complaint. *See State Farm Fire & Cas. Co. v. El-Moslimany*, 178 F. Supp. 3d 1048, 1057-60 (W.D. Wash. 2016) ("The mere fact the complaint includes the terms 'negligently' and 'reckless' does not alter the clearly deliberate nature of the conduct alleged.") Such intentional and criminal acts are excluded

from coverage under both the Homeowner Insurance Policy and Washington law. The Court therefore finds no genuine issue of material fact and defendant entitled to a judgment as a matter of law on the issue of an absence of a duty to defend or indemnify under the Homeowner Insurance Policy.[1]

2. <u>Auto Insurance Policy</u>:

The Auto Insurance Policy at issue provides coverage for bodily injury or property damage "for which any 'insured' becomes legally responsible because of an auto accident." (Dkt. 12, Ex. C (Part A "Liability Coverage", "Insuring Agreement" at A).) It does not provide coverage "for any 'insured'" who "intentionally causes, or directs another person to cause, 'bodily injury' or 'property damage'." (*Id.* ("Exclusions" at (A)(1)).) It also excludes coverage for injury or damage "caused by or reasonably expected to result from, a criminal act or omission of the 'insured'[,] . . . regardless of whether the 'insured' is actually charged with, or convicted of, a crime." (*Id.* ("Exclusions" at (A)(14)).) Like the homeowner policy, the auto policy does not define the term "accident."

Commerce West again asserts the clearly intentional conduct of Cisneros in shooting and killing Chikh is precluded by Washington law and the plain language of the Auto Insurance Policy, and cites to case law finding similar intentional acts excluded from insurance coverage. *See, e.g., Butler*, 118 Wn. 2d at 401-03 (where individual "intentionally fired his gun at an occupied, metal truck[]" and "no reasonable person could conclude [individual] was unaware of the possibility of ricochet, or that a ricochet might hit an occupant of the truck[,]" the resulting injury was "not the

---

[1] Plaintiff also points to an exclusion in the Homeowner Insurance Policy for bodily injury caused to an insured. (*See* Dkt. 12, Ex. B (Form 3, p. 2 (excluding coverage for "'bodily injury' to 'you', and if residents of 'your' household, 'your' relatives and persons under the age of 21 in 'your' care or in the care of 'your' resident relatives."))) Because the Court finds coverage clearly excluded based on the intentional and criminal nature of the occurrence, it declines to address this additional provision.

REPORT AND RECOMMENDATION
PAGE - 9

result of an 'accident'" and insurer had no obligation to provide coverage for the injury); *Dotts*, 38 Wn. App. at 385-86 (backhand slap resulting in death was not an "accident" even if there was no intent to kill). For the same reasons discussed in relation to the homeowner policy, the Court agrees. Again, the facts reflect Cisneros deliberately shot a gun into a vehicle in which Chikh was sitting, resulting in her death. (*See* Dkt. 12, Ex. A.) As argued by Commerce West, the deliberate act of shooting a gun into an occupied vehicle cannot be deemed an accident, regardless of whether Cisneros intended to kill Chikh.

Commerce West also raises two additional arguments. It asserts the Auto Insurance Policy was not triggered in the first instance because Cisneros was not operating a vehicle and, more particularly, was not operating the insured vehicle at the time of the incident, the injuries to Chikh resulted solely from an assault, not an auto accident, and the only involvement of a vehicle was its use to transport Cisneros to the scene and to block Chikh's vehicle. *See, e.g., PEMCO Ins. Co. v. Schlea*, 63 Wn. App. 107, 111, 817 P.2d 878 (1991) ("The fact that the vehicle is the 'mere "situs"' of an accident does not bring the occurrence within the coverage of the policy. The injury must result from the type of motoring risk that the parties intended to cover by the automobile policy."; finding no coverage where assailant used vehicle to transport victim, but the victim's "injuries did not result from the natural and reasonable use of the vehicle."; "Kidnapping, assault, and rape are not motoring risks against which the parties intended to insure. Further, the vehicle did not contribute towards her assault and rape; it was the mere "situs" of [the] violent acts.") (internal citations omitted). Commerce West similarly denies any basis for finding uninsured motorist (UM) coverage given the absence of any causal connection between the vehicles and the injuries to Chikh from the shooting, and where the vehicles served as no more than the situs of the incident. *See, e.g.*, *Butzberger*, 151 Wn.2d at 404 (three factors must be met for UM coverage to apply: "(1)

there must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; and (3) the person must also be engaged in a transaction essential to the use of the vehicle at the time.")

As stated above, to establish insurance coverage in the first instance, there must be a showing an alleged loss falls within the scope of a policy's insured losses. *McDonald*, 119 Wn.2d at 731. In this case, the facts do not allow for a conclusion the injuries resulted from a "natural or reasonable use" of a vehicle, falling within the coverage of the auto insurance policy. *Schlea*, 63 Wn. App. at 111. *See also State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543-44, 543 P.2d 645 (1975) ("Thus, before an injury arises out of the use of a vehicle, the vehicle must contribute in some fashion toward producing the injury; the vehicle must be more than the coincidental place in which the injury occurred."; finding unloading of a weapon in a vehicle "not normally anticipated[]" and the more pertinent inquiry to be "whether the parties to the contract intended to cover the risk which flows from the unloading of a weapon in a moving vehicle returning from a hunting trip, when the ordinary experiences of mankind dictate that guns are customarily unloaded when not intended for immediate use.") Likewise, the facts in this case do not show a sufficient causal connection between the use of a vehicle and the resulting injuries to provide for a finding of UM coverage. *See, e.g.*, *Culp v. Allstate Ins. Co.*, 81 Wn. App. 664, 669, 915 P.2d 1166 (1996) (finding no UM coverage where there was no evidence the discharge of a shotgun by an individual standing outside a vehicle "was due to contact with any portion of the vehicle or was causally connected to the use of the vehicle[,]" the shotgun pellets did not ricochet off the vehicle, and there was no evidence the presence of a victim in or in proximity to the vehicle "causally contributed in any way to [the] discharge of the shotgun.") *Cf. Butzberger*,

REPORT AND RECOMMENDATION
PAGE - 11

151 Wn.2d at 412-13 (finding UM coverage where a driver was using his vehicle as transport to work, that use was interrupted when the driver stopped his vehicle to assist at an accident and was struck and killed by an uninsured motorist, and the death occurred while the driver was when still in close proximity to his vehicle).  The facts, instead, show the vehicles driven by Cisneros and Chikh provided nothing more than "the mere situs" of the incident that resulted in Chikh's death.  *Culp*, 81 Wn. App. at 669.  The Court thus also finds no genuine issue of material fact and defendant entitled to a judgment as a matter of law on the issue of an absence of a duty to defend or indemnify under the Auto Insurance Policy.

## CONCLUSION

Because plaintiff is entitled to a judgment as a matter of law, the Court recommends the Motion for Summary Judgment (Dkt. 11) be GRANTED and plaintiff found entitled to the declaratory relief requested.  Specifically, the Court should enter a ruling holding that:  (1) the Auto Insurance Policy does not provide coverage to Cisneros in the underlying litigation; (2) the Homeowner Insurance Policy does not provide coverage to Cisneros in the underlying litigation; (3) Commerce West does not have a duty to defend Cisneros in the underlying litigation because there is no coverage; and (4) Commerce West does not have a duty to indemnify Cisneros in the underlying litigation because there is no coverage.  The dismissal should be with prejudice.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within

**fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 1, 2020**.

DATED this 16th day of April, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 13